Good morning. Whenever you're ready, counsel. Thank you, Your Honor. I would request three minutes in rebuttal if that will be convenient with the court. Certainly. I'll try to keep track of your time, but look at the clock as well. I will. Thank you, Your Honor. This is a case which Mr. Loader believes clearly requires a remand. We are not asking for a reversal, but we are asking for a remand. Here, the ALJ simply failed to apply the factors in section 416.927. The government has, or Social Security has, suggested that we were requesting a factor analysis, a specific factor analysis under that regulation. That's not accurate. We are saying that as a whole, section 416.927 was not actually followed, which bears on the remand that was sent to it. The remand required that a better examination of the medical evidence take place, and in evaluating the error or the error of the lower court in its de novo review process, this particular objection was not addressed. Proper evaluation of medical evidence is, of course, fundamental to any disability hearing, and there was a revision of Mr. Loader's VA disability, which was never considered by the ALJ in the matter below, and never considered, of course, then by the lower court. This is a factor because Mr. Loader's disability became more pronounced, and it's worthy of note that the ALJ ordered the appellate counsel, and the ALJ provided a completely new hearing for Mr. Loader. And so this additional evidence concerning the decrease in disability, as well as the failure to consider the functional impacts of his need for a cane, or the DuPrin's contracture, all culminate to say that there was less than an adequate review of the medical evidence. Now, a part of Mr. Loader's argument to the court is that the vocational, the hypotheticals that were propounded to the, excuse me, before then, I want to touch a little bit on the argument of credibility. There's a dispute between Mr. Loader and the Social Security Administration as to the credibility. I think the Social Security has taken the position that once the Ninth Circuit determined that Mr. Loader's credibility was warranted an adverse credibility finding, that that created the law of the case. We strongly disagree that the law of the case doctrine applies, and there are both practical and legal issues associated with that statement. First, there are practical considerations of why that statement does not make, practically speaking, there was no point to having any further testimony from Mr. Loader if the Social Security Administration actually thought, as a matter of law, his testimony was less than credible. We think that the issue of credibility below in the last hearing addressed the, strike that, that the law of the case of the doctrine is inapplicable if Mr. Loader was expected to provide no testimony. The legal aspect of the case is the law of the doctrine applies to the issue in question, and we take the position that the issue in question, if the second hearing was different than the issue in question, the credibility question in the first document, and it is important to note that we've taken the position that there is no conflict in the medical evidence and the testimony Mr. Loader provided at the second hearing. Lastly, we would like to take a look or have the court take a look at the complete absence of solid vocational testimony. In particular, the lower court essentially just regurgitated the decision of the, the implied decision of the ALJ that the hypothetical questions were accurate and completely addressed the functional limitations that Mr. Loader was suffering. But as we've said in our briefing, that is in fact not the case. The functional limitation, and I'm not arguing that he, he had a, an impairment as a matter of law, but we are arguing the use of a cane is a functional limitation that has to, it's a vocation, has vocational impact. And so we think that the hypothetical questions were deficient, and as you'll note in the briefing, the, essentially the government does not object, does not in fact actually address our concerns that there was an incomplete vocational summary based on the hypothetical questions that were presented to the vocational experts. And unfortunately, the district court did not respond at all to that part of the argument, merely regurgitating that the impairment, the hypothetical questions were sufficient to cover all impairments. We've been specific on how that did not happen, and we would request an order of remand. Your Honor, I see that I have about three and a half minutes left, and this seems to be a good time for me to open the argument up to questions or to reserve the rest of my time. All right, let's reserve the rest of your time, if that's what you wish to do, and let's hear from the government. Good morning. May it please the Court, Jeff Staples here for the Commissioner, who asks that you affirm the district court's judgment because substantial evidence supports the ALJ's fact-finding. In Loader v. Berryhill, this Court instructed the ALJ to do one thing on remand, reassess the evidence of Loader's depression, specifically in the context of his functional limitations. And the ALJ did that. The ALJ went through and looked at the allegations that Loader made about the limiting effects of his depression and compared them with the evidence in the record. Now, the ALJ found that those two did not always line up. So Loader told the ALJ that he was depressed all the time and really couldn't get out of his house because he was so limited by it. But the record told a different story. Loader's treatment records show that his depression was in remission and that he had an exacerbation of it related to his Social Security disability. Counsel, didn't Loader file a new claim for disability so the ALJ was not just limited to what happened on remand? So the ALJ consolidated that claim with this one. And the ALJ did consider all of the papers from that file, but the problem was that there just wasn't anything different. There was some new evidence, but it wasn't different evidence. So when this court in Loader v. Berryhill said that the ALJ reasonably assessed all of Loader's physical impairments, all of that evidence is still here. Those conflicts remain. So when Loader says he needs a cane, he can't walk, he's having this extreme back pain, that's still contradicted by all of the activities, the conservative treatment, the effective treatment, that this court found to be clear and convincing reasons for discounting those statements in Loader v. Berryhill. And is it your view that the law of the case doctrine precludes us from revisiting the ALJ's conclusions on those points, or is it just that we shouldn't because the first court was right and we should say the same thing as what they said? I believe that the law of the case doctrine does preclude reevaluation of that to the extent that it doesn't, though. I think that's why the law of the case doctrine is there, because when all of this evidence is still there and really nothing is different on remand, you know, I don't dispute that there is evidence in the file now that wasn't there when the court made its determination before. There was a new hearing, right? It was a new hearing, but he didn't say anything different. He didn't come and say, oh, and now I have, you know, schizophrenia or anything like that. He was saying the same things. And so I think what the law of the case doctrine is supposed to get at is to conserve some judicial resources by saying, you know, we already looked at this. These claims that you made, this evidence that you provided, the court has already looked at that. And while they're- Counsel, I think the one piece of new evidence that happened was the VA rating, that he was rated 50 percent disabled for major depression. That was new evidence, correct? Yes. And so did the ALJ address that? The ALJ talked about the VA disability ratings, and I can't recall if the ALJ specifically talked about the depression rating, but what the ALJ said about the VA ratings is that they did not provide specific functional limitations. Nevertheless, the ALJ took those into account in assessing very severe physical and mental limitations. So to the extent that the ALJ may have missed one or two of these records, that really doesn't all have to be discussed when the ALJ goes ahead and considers and incorporates them anyway. So I understand your argument. The 50 percent rating for depression, you're saying the ALJ, it's harmless error because it was already accounted for in the RFC? Is that- Absolutely. And Loder does point to some other treatment records that the ALJ didn't specifically mention, showing that he has a diagnosis of depression, that he is suffering from some depression. The ALJ doesn't need to discuss every single time in the record where this impairment is mentioned. But what the ALJ did was gave Loder a real great benefit of the doubt in saying, you know, even though your own treatment providers are saying that this is largely in remission and it's really a single episode or a few episodes of depressive symptoms, you know, when you don't have much, you know, mental health treatment and your treatment providers are kind of going along with that. Could you actually explain what it means to be rated 50 percent disabled for depression by the VA? I cannot say what that means, Your Honor. You know, as a Social Security attorney, I just don't have any access to that information. You know, we do see it. But it's not like it translates into a limitation. There's no direct translation. No. And, yeah, I really can't say anything more knowledgeably. But what I can say is that the ALJ did look at those. And although those don't really align directly with anything specific, the ALJ found that Loder was limited to light work with a sitting and standing alternate, alternating between sitting and standing. And on the mental side, even though his allegations didn't really line up with the evidence of record, the ALJ still found, you know, consistent with a VA 50 percent disability rating, that he could only perform simple tasks with very limited interaction with other people. And that was to accommodate what Loder was saying about his difficulties getting along with other people and having those social interactions. So the jobs that Loder could do are jobs that require very small interaction with more than one person at a time and just a few interactions with one person at a time. Although it didn't account, though, did it, for Loder's testimony that I believe it was, you know, a couple of times a month he was essentially unable to function. Right. Which, I mean, do you dispute that if that were accredited, I think the vocational expert's testimony suggests that he would be unable to work? No, I do not dispute that, Your Honor. So I don't mean to say that the ALJ credited everything that he said. The ALJ gave him some benefit of the doubt in saying, you know, you're coming here, you're telling me these kind of things, that there are periods where you can't even leave your house. And the records showing that your depression is largely in remission, they don't line up with that at all. And so the ALJ was really left with, I've got to strike a balance somewhere here. And the ALJ did that. You know, consistent with this court's direction in Loder v. Berryhill, the ALJ took a look at that evidence and said, well, I can't really go with what you say because the record is totally to the contrary, but, you know, let's try to split the difference here and say that maybe you can do some interaction with other people, but, you know, not to the extent that you've claimed. And the ALJ did provide analysis of that and the reasons for, you know, not fully crediting what Loder said were good and supported by substantial evidence in the record. And because that is what the court directed the ALJ to do, because the ALJ did exactly what the court directed him to do, and substantial evidence supports those findings, the question to the vocational expert did not need to be any different. So because the ALJ asked the vocational expert a question that accounted for all of the credible limitations that the ALJ found in this record, because substantial evidence supports that, the Step 5 finding is likewise supported and the court should affirm. If there are no further questions, I appreciate your time. Thank you. Mr. O'Brien. Thank you, Your Honor. I want to hit a point that we were making in this current appeal, which is that the Brown v. Hunter legal criteria were not applied to the testimony that was provided by Mr. Loder. Specifically, the court has already focused on the fact of an increase, a reevaluation of his depression through the VA. And in a sort of ironic position, we understand that originally the ALJ found he was not credible. We would argue that it is perhaps the VA was behind in assessing the actual severity of his depression. And that's one of the reasons that could have been revised in more detail over time and more exacting treatment plans. Counsel, can you explain what it means to be rated 50% disabled for major depression by the VA? Well, in a general term, Your Honor, I've had other cases in which the VA, besides providing treatment of physical problems, also provides regularly mental health problems. And usually based on what is considered objective evidence, the interrelationship between a treater and the claimant, in this case, who has VA benefits, as that treatment happens, the individual, of course, with those examinations, explains differently, not necessarily related to disability. He's talking about his mental response. So it can be as general as fatigue, as general as anxiety. And what the treater is supposed to do is pursue the complaints, the clinical complaints that a VA veteran has concerning depression. And as that relationship develops, as the relationship deepens, the treater is asked to provide opinion as to the severity of that condition, which generically is called that depression. In this case, it's depression, but it has the clinical symptomology that was described by Mr. Loder through his testimony. I hope that answers the court's question. Close enough. Thank you. We can't help but make comment in terms of the irony with an adverse credibility determination, which did not follow the court's requirements under Brown v. Hunter. And we agree with the court to the extent it says new evidence required a better evaluation, the adverse credibility determination, and a better evaluation of the hypothetical questions that were propounded to the expert. Thank you. I see that my time is essentially concluded. All right. Thank you very much, counsel, for both sides, for your argument this morning. The matter is submitted.
judges: NGUYEN, MILLER, BUMATAY